# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 92-KA-01058-SCT

*PHUC HOANG TRAN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/17/92 |
| TRIAL JUDGE: | HON. JERRY OWEN TERRY SR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | F. HOLT MONTGOMERY JR. |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEWITT T. ALLRED III |
| DISTRICT ATTORNEY: | WILLIAM MARTIN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 8/22/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/12/96 |

**BEFORE SULLIVAN, P.J., BANKS AND ROBERTS, JJ.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Phuc Hoang Tran (Tran) killed Chi Phuong Ho (Chi) with a shotgun in the parking lot of Anh Hong, a Vietnamese restaurant, in Biloxi Mississippi, on June 21, 1990.

¶2. On the afternoon of the shooting Tran and some friends had been picnicking. At around 6:00 p.m. the group decided to go to the Anh Hong restaurant. Chi and a group of friends also dined at the Anh Hong. During the evening Tran went to the restroom at the rear of the restaurant. Chi came into the restroom later and an argument followed. Tran remained in the restroom after Chi left. Tran left the restroom and Chi and three or four of his friends jumped on him and a fight ensued. Tran testified that Chi had a gun on his person. The police later arrived, breaking up the fight.

¶3. After the beating, Tran's friend, Xa Van Nguyen (Xa), drove him to an apartment where Tran washed up. Tran had suffered several cuts and a broken nose. According to Tran, he and Xa returned to the Anh Hong restaurant to return the two-door Oldsmobile they had borrowed. Xa was driving and Tran was in the passenger seat. Tran testified that upon entering the car, he noticed for the first time that the owner had left a shotgun lying on the floor of the back seat.

¶4. According to Tran, when he and Xa arrived at the Anh Hong Restaurant, Chi was outside. Tran testified that Chi said "one of you are going to die." Tran stated that when he saw Chi go for his gun, which was in his pants, he jumped into the back seat, grabbed the gun, pointed it out the window and fired it in the general vicinity of Chi. According to Tran, after he shot Chi, he and Xa left the premises as soon as they could, to avoid revenge from the friends of Chi.

¶5. One state witness, Violet Nguyen, testified that while inside the restaurant she viewed the car in which Tran and Xa were in when they arrived back at the Anh Hong. She testified that at first all she saw was Tran in the passenger seat, but later recognized Xa as the driver. She stated that she saw the barrel of the gun come out of the passenger side, but did not see the shooting itself.

¶6. Dr. Paul McGary's testimony, the forensic pathologist who performed the autopsy in this case, was stipulated to by the parties. His testimony was that Chi died as a result of a shotgun wound involving the face, neck, chest, shoulders, and upper abdomen with a total of one hundred forty-seven shot holes.

¶7. Xa, the driver of the car, was arrested in Louisiana in October of 1990, while driving the same two-door Oldsmobile. Tran was arrested in Hattiesburg around a year after the killing in 1991. Tran was indicted and tried along with Xa Van Nguyen in the Circuit Court of Harrison County, Mississippi, Second Judicial District, Honorable Jerry O. Terry presiding. The trial took place July 15, 16, and 17, 1992. On July 17, 1992, the jury returned a verdict finding both defendants guilty of the murder of Chi, and the lower court sentenced Tran on the same day to a term of life imprisonment.

## STATEMENT OF THE LAW

### I.

### JURY INSTRUCTION S-1

¶8. Tran objects to the use of jury instruction S-1 for many reasons, the first being that the instruction relieved the prosecution of its burden of persuasion beyond a reasonable doubt of every essential element of a crime, secondly that the instruction was an incorrect definition of the element of deliberate design, third because of the facts of this case the instruction was incorrect because the defendant gave a full accounting of his actions, and lastly, the instruction was an abstract statement of the law and was not limited by the facts of the case. Instruction S-1, which Tran so vehemently objects to being given states:

> Deliberate design means intent to kill, without authority of law and not being legally justifiable, legally excusable or under circumstances that would reduce the act to a lesser crime.

> Deliberate design may be presumed from the unlawful and deliberate use of a deadly weapon.

¶9. At the outset we must note that counsel for Tran did not object to the first paragraph of the instruction. In fact counsel stated, "We feel that the top paragraph of S-1 is a correct statement of the law . . . ." Thus, Tran's argument as to the first paragraph of this instruction is procedurally barred by his failure to object at trial. *Mitchell v. State*, 609 So. 2d 416, 422 (Miss. 1992); *Rogers v. State*, 599 So. 2d 930, 937 (Miss. 1992). Nevertheless, this Court will discuss this part of the instruction to help

facilitate the lower court in the future.

¶10. Tran's argument against the first paragraph of this instruction is based upon his reading of cases involving the "at the moment" instruction citing *Pittman v. State*, 297 So. 2d 888, 892-93 (Miss. 1974) and *Newell v. State*, 308 So. 2d 71 (Miss. 1975).

¶11. *Pittman* and the cases following it, did not draw a distinction between the concepts of malice aforethought and deliberate design, these cases were concerned with instructions that require juries to convict defendants of murder upon the finding of the existence of "malice aforethought" or "deliberate design" at the very instant of the fatal act, without taking into account that a killing may be intentional and yet be manslaughter or excusable or justifiable homicide. *Pittman*, 297 So. 2d at 893. In the case here, Instruction S-1 said nothing about formation of deliberate design "at the very instant" and clearly informed the jury "that there are instances in which a deliberate design to kill may exist . . . and yet the homicide may be justifiable or excusable . . . ." *Id.* There is no flaw in the instruction given as it does not state that deliberate design can be formed at the very moment of the fatal act, thereby avoiding the pitfall of *Pittman* and its progeny.

¶12. In *Newell* the erroneous instruction did not deal with an "at the very moment" instruction, but this Court's concern was that the instruction ignored the possibility that a killing can be deliberate or intentional and yet be other than murder. *Newell*, 308 So. 2d at 73. This instruction does not cut off Tran's contention that the shooting was in self-defense.

¶13. Tran also argues that the first paragraph of the instruction may be a correct statement of the law as to malice aforethought, but it simply does not do as a definition of the very different element of deliberate design. However, "[i]t has long been the case law of this state that malice aforethought, premeditated design, and deliberate design all mean the same thing." *Windham v. State*, 602 So. 2d 798, 801 (Miss. 1992) (quoting *Johnson v. State*, 475 So. 2d 1136, 1139 (Miss. 1985)) (citing *Dye v. State*, 127 Miss. 492, 90 So. 180 (1921); *Hawthorne v. State*, 58 Miss. 778 (1881); *McDaniel v. State*, 16 Miss. (8 S. & M.) 401 (Miss. 1847))). "Definitionally, we regard 'malice aforethought' and 'deliberate design' as synonymous." *Blanks v. State*, 542 So. 2d 222, 227 (Miss. 1989) (citing *Fairman v. State*, 513 So. 2d 910, 913 (Miss. 1987); *Johnson v. State*, 475 So. 2d 1136, 1139 (Miss. 1985); *Lancaster v. State*, 472 So. 2d 363, 367 (Miss. 1985)). Thus, Tran's arguments against the first paragraph of Instruction S-1 are meritless.

¶14. Tran also complains that the second paragraph of the instruction is erroneous. "Instructions in forms similar to the above have been before the Court for many years and a long line of cases have discussed such instructions." *Carter v. State*, 493 So. 2d 327, 330 (Miss. 1986) (citing *Allison v. State*, 274 So. 2d 678 (Miss. 1973); *Blackwell v. State*, 257 So. 2d 855 (Miss. 1972); *Stewart v. State*, 226 So. 2d 911 (Miss. 1969); *Hydrick v. State*, 246 Miss. 448, 150 So. 2d 423 (1963); *Funches v. State*, 246 Miss. 214, 148 So. 2d 710 (1963); *Shields v. State*, 244 Miss. 543, 144 So. 2d 786 (1962); *Johnson v. State*, 223 Miss. 167, 77 So. 2d 824 (1955); *Tullos v. State*, 222 Miss. 90, 75 So. 2d 257 (1954); *Smith v. State*, 205 Miss. 283, 38 So. 2d 725 (1949); *Bridges v. State*, 197 Miss. 527, 19 So. 2d 738 (1944); *Busby v. State*, 177 Miss. 68, 170 So. 140 (1936); *Batiste v. State*, 165 Miss. 161, 147 So. 318 (1933); *Winchester v. State*, 163 Miss. 462, 142 So. 454 (1932); *Smith v. State*, 161 Miss. 430, 137 So. 96 (1931); *Walker v. State*, 146 Miss. 510, 112 So. 673 (1927); *Cumberland v. State*, 110 Miss. 521, 70 So. 695 (1915); *Brandon v. State*, 75 Miss. 904, 23

So. 517 (1898); *Hansford v. State*, 11 So. 106 (Miss. 1891); *Hawthorne v. State*, 58 Miss. 778 (1881); *Lamar v. State*, 63 Miss. 265 (1885); *McDaniel v. State*, 16 Miss. (8 S. & M.) 401 (1847)).

¶15. "One hundred twenty-five years ago this Court condemned a similar instruction." *Blackwell v. State*, 257 So. 2d 855, 856 (Miss. 1972) (citing *McDaniel v. State*, 16 Miss. (8 S. & M.) 401 (1847) ). "A review of the digest reveals more than twenty cases where similar instructions have been held erroneous." *Blackwell*, 257 So. 2d at 856. This Court decided this case in 1972. Since then, this Court has consistently held such an instruction erroneous.

> In a long line of cases, this Court has held that an instruction on an asserted presumption of malice from the use of a deadly weapon is proper only where the testimony has failed to establish the circumstances of the use of the weapon. Where the facts have been set forth in the evidence, as here on conflicting testimony, the question of malice should be left for the consideration of the jury, and the granting of such an instruction is error.

*Stewart v. State*, 226 So. 2d 911, 912 (Miss. 1969) (citing *Chinn v. State*, 210 So. 2d 666 (Miss. 1968); *Hydrick v. State*, 246 Miss. 448, 150 So. 2d 423 (1963)).

¶16. This Court in *Johnson v. State*, 223 Miss. 167, 77 So. 2d 824 (1955), considered an instruction essentially the same as that involved in the present case. This Court found that the instruction was reversible error because it stated that the deliberate use of a deadly weapon "is in law, evidence of malice," and because it was peremptory in character. *Johnson*, 223 Miss. at 172. "Although malice aforethought may be presumed from the unlawful and deliberate use of a deadly weapon, this instruction may only be used 'where the evidence has failed to establish the circumstances surrounding the use of the weapon.'" *Moawad v. State*, 531 So. 2d 632, 636 (Miss. 1988) (Lee, Dan, J., concurring) (quoting *Carter v. State*, 493 So. 2d 327, 330 (Miss. 1986)).

¶17. The Court in *Stewart* held that such an instruction can be very misleading to a jury. An instruction of this type constitutes

> an unfair reference to a nonexistent presumption, because when all of the evidence is in, there is no presumption. Moreover, an instruction on a presumption in this posture of a case is a manifest attempt to bolster the state's evidence. Where the testimony has shown the circumstances of the use of the weapon, the district attorney should not request and the circuit court should not grant an instruction on a presumption of malice from the use of a deadly weapon.

*Stewart*, 226 So. 2d at 912.

¶18. Again in *Chinn v. State*, 210 So. 2d 666 (Miss. 1968), this Court discussed a jury instruction that was almost identical to the one here. This Court stated that this

> "presumption" is rebuttable, and is more properly classified as an inference, even if available in a particular case. It should not be projected in an instruction which fails to disclose its susceptibility to rebuttal, and intimates to the jury that the state has thereby made out its case. Inferences may be drawn properly by the jury from the facts before it, without the trial court invading the jury's province with a direction as to "presumptions" or inferences.

*Id.* at 669 (citing *Barnette v. State*, 252 Miss. 652, 173 So. 2d 904 (1965); *Hydrick v. State*, 246 Miss. 448, 150 So. 2d 423 (1963); *Funches v. State*, 246 Miss. 214, 148 So. 2d 710 (1963); *Shields v. State*, 244 Miss. 543, 144 So. 2d 786 (1962)).

> When all the evidence in a case has been adduced, the presumption, if any at the outset, disappears. The jury will draw inferences from the evidence without the State bolstering its evidence, as the appellant here claims. An instruction such as S-6, in its many forms, should be granted only where the evidence has failed to establish the circumstances surrounding use of the weapon. Where the facts have been set forth, even on conflicting testimony, the question of malice should be left for the consideration of the jury.

*Carter v. State*, 493 So. 2d 327, 330 (Miss. 1986) (citing *Stewart v. State*, 226 So. 2d 911 (Miss. 1969); *Chinn v. State*, 210 So. 2d 666 (Miss. 1968); *Hydrick v. State*, 246 Miss. 448, 150 So. 2d 423 (1963)).

¶19. In Tran's case the facts of the shooting had been set forth in the trial because Tran, Xa, and a witness by the name of Violet Nguyen testified as to the incident. Although the testimony was conflicting, the question of malice should be left for the consideration of the jury. Because the lower court erroneously granted this portion of the instruction, in that it relieved the prosecution of its persuasion, Tran's two other arguments against this paragraph of the instruction need not be discussed. It was reversible error to give the second paragraph of this instruction to the jury.

## II.

## JURY INSTRUCTION S-6A

¶20. Although Tran's first assignment of error is reversible, this Court will discuss his other issues to help facilitate the lower court on remand.

¶21. Tran concedes that the prosecution properly put on proof of his flight from the Mississippi Gulf Coast and his subsequent arrest in Hattiesburg approximately one year after the events in question. However, he argues that the prosecution improperly submitted and the court erroneously approved, over defense objections, instruction S-6A, which instructed the jury:

> "Flight" is a circumstance from which guilty knowledge and/or fear of arrest may be inferred. If you believe from the evidence in this case beyond a reasonable doubt that the defendants did flee or go into hiding, such flight or hiding is to be considered in connection with all other evidence in this case. You will determine from all the facts whether such flight or hiding was from a conscious sense of guilt or whether it was caused by other things and give it such weight as you think it is entitled to in determining the guilt or innocence of the defendants.

¶22. We have said before that caution should be invoked by a court before giving such a flight instruction. "[A]n instruction that flight may be considered as a circumstance of guilt or guilty knowledge is appropriate only where that flight is unexplained and somehow probative of guilt or guilty knowledge." *Reynolds v. State*, 658 So. 2d 852, 856 (Miss. 1995) (quoting *Fuselier v. State*, 468 So. 2d 45, 57 (Miss. 1985)). To decide whether a flight instruction is appropriate, this Court has set out a two-prong test. These prongs are: "(1) Only unexplained flight merits a flight instruction;

and (2) Flight instructions are to be given only in cases where that circumstance has considerable probative value." **Reynolds**, 658 So. 2d at 856 (citing **Fuselier**, 468 So. 2d at 57).

¶23. The present case does not fall within either of the circumstances where a flight instruction would be appropriate or warranted. Tran's flight was explained by both himself and his co-defendant - they were fleeing to avoid retribution from the friends of Chi. This Court has stated that:

> [w]here the defendant is arguing self-defense, a flight instruction should be automatically ruled out and found to be of no probative value. A flight instruction will have particular prejudicial effect in a case where self-defense is argued. Where the person against whom self defense has been exercised . . . flight seems logical and necessary. . . . To suggest and highlight, through the sanction of a court granted instruction, that the defendant's flight was possibly an indication of guilt suggests that the court does not accept the self-defense argument.

**Banks v. State**, 631 So. 2d 748, 751 (Miss. 1994).

¶24. Because Tran was arguing self-defense and the jury heard the testimony on Tran's flight, it was free to draw its own conclusions as to the flight significance. Since it was clearly reversible error to grant such an instruction and call undue attention to Tran's flight, on remand the lower court should not give the flight instruction.

## III.

### JURY INSTRUCTION S-2

¶25. Next Tran argues that it was error for the trial court to give the State's instruction S-2. A review of the record below reveals that Tran's counsel did not make an objection to State's instruction S-2. In fact Tran's counsel stated that the instruction was a correct statement of the law. This Court has held that when counsel fails to object to a proposed jury instruction it acts as a procedural bar and such issues are not properly before this Court. **See Moawad v. State**, 531 So. 2d 632, 635 (Miss. 1988) (citations omitted).

¶26. Again however, this Court will discuss this jury instruction on its merits to assist the lower court on remand. Instruction S-2 reads:

> The defendant, Phuc Hoang Tran, has been charged by an indictment with the crime of Murder for having caused the death of Chi Phuong Ho, with the deliberate design to kill Chi Phuong Ho.

> If you find from the evidence in this case, beyond a reasonable doubt that on or about June 21, 1990 in the Second Judicial District of Harrison County, Mississippi, that:

> A. The deceased, Chi Phuong Ho, was a living person, and

> B. The defendant, Phuc Hoang Tran, while acting alone or in concert with another, did willfully and of his deliberate design kill Chi Phuong Ho by shooting him with a shotgun; and

> C. That said shooting was not in necessary self defense, then you shall find the defendant guilty of Murder.

If the State has failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the defendant, Phuc Hoang Tran, not guilty of murder.

¶27. Tran argues that the above instruction is prejudicially deficient since it peremptorily excluded the jury from the consideration of homicide less than murder. To support his argument Tran cites the case of **Smith v. State**, 463 So. 2d 1028 (Miss. 1985), in which this Court held that an almost identical instruction was reversible error. However, there is one very important distinction between the instruction in **Smith** and the one here. In **Smith** the instruction directed the jury to find the defendant guilty of murder if Smith willfully and deliberately killed the deceased without authority of law. The instruction did not contain any language which allowed the jury to find for the defendant if they deemed the killing manslaughter. The difference between the instruction in **Smith** and the one here is the instruction in this case has the extra language in section C. This allows the jury to decide if the shooting was not in self-defense, *then* the jury could find Tran guilty of murder. The above instruction is not peremptory because it does allow the jury to consider homicide less then murder, thus the instruction as given was not erroneous.

¶28. Next, Tran argues that S-2 was fatally defective in that it recites only the self-defense exception and fails to mention all the other circumstances under which the jury could have found the homicide to have been justifiable, excusable, or manslaughter. This argument is particularly unpersuasive in that no theory of manslaughter or accident was urged by the defense in this case, and the only issue was whether Tran's killing of Chi was justified on the grounds of self-defense. Where the only theory of defense was self-defense and the jury was properly instructed thereon, there was no requirement that the court instruct as to other possible theories. **Smith v. State**, 572 So. 2d 847, 849 (Miss. 1990) . Accordingly, Tran's argument against Instruction S-2 has no merit.

## IV.

## WERE JURY INSTRUCTIONS S-1, S-2, S-7, AND D-12 IN HOPELESS CONFLICT WITH ONE ANOTHER?

¶29. Tran next argues that jury instructions S-1, S-2, S-6A, S-7, and D-12 were in hopeless conflict with one another. He complains that instruction S-1 was improper as to the use of a deadly weapon and instruction S-6A on the flight inference, suggesting to the jury that the burden of persuasion shifted to the defendant upon the proof of the predicate fact of the use of a deadly weapon or flight. So, Tran argues that the improper instructions were in hopeless conflict with the proper instructions, S-7 and D-12, a situation which compelled the jury to resolve the conflict and select the proper law applicable to the facts of the instant case. Since this Court is suggesting that jury instruction S-1, the second paragraph as to the use of a deadly weapon, and S-6A as to Tran's flight, were erroneously given in this case, we resolve this issue in Tran's favor.

## V.

## DID THE LOWER COURT ERR IN FAILING TO FOLLOW THE <u>WEATHERSBY</u> RULE AND DIRECT A VERDICT FOR DEFENDANT?

¶30. Tran asserts that since he and his co-defendant were the only eye witnesses to the homicide in question the lower court erred in not directing the verdict based on the **Weathersby** rule. Tran argues

that under the facts of his case, since the State's witness did not materially contradict the defendant's version of self-defense, it was mandatory upon the trial court to grant the motion, and failure to do so constituted reversible error. *Pritchett v. State*, 560 So. 2d 1017 (Miss. 1990); *Weathersby v. State*, 165 Miss. 207, 147 So. 2d 481 (1933).

> [I]f the defendant and his witnesses are the only eyewitnesses to the homicide and if their version of what happened is both reasonable and consistent with innocence and if, further, there is no contradiction of that version in the physical facts, facts of common knowledge or other credible evidence, then surely it follows that no reasonable juror could find the defendant guilty beyond a reasonable doubt. Under such circumstances we have always mandated that peremptory instructions be granted whether under the label *Weathersby* or otherwise.

*Green v. State*, 614 So. 2d 926, 932 (Miss. 1992) (quoting *Harveston v. State*, 493 So. 2d 365, 371 (Miss. 1986)).

¶31. In this case, Tran's version of the shooting as self-defense was contradicted by the testimony of his co-defendant whether the deceased, Chi, was drawing a gun or merely had his hand on the gun while in his pants, there was contradictory testimony from the State's witness, whether Tran was in the front seat or the back seat when he fired the gun, and there was contradictory testimony from the State's witness and the defense witness Tien Nguyen, whether Chi was alone or with another person in the parking lot. The *Weathersby* rule does not to apply to situations where the defendant's version has been contradicted, *Ruffin v. State*, 481 So. 2d 312, 316 (Miss. 1985), or when the defendants were not the only eyewitnesses. *Strong v. State*, 600 So. 2d 199, 202 (Miss. 1992).

¶32. Thus the *Weathersby* rule, which requires that the defendant be the only eyewitness, and if his version is reasonable must be accepted as true, unless substantially contradicted by material particulars by a credible witness or witnesses, or by physical facts or facts of common knowledge, is not applicable to this case. Based on the evidence contradicting Tran's version, the *Weathersby* rule does not apply to this case.

## CONCLUSION

¶33. Because the lower court erroneously instructed the jury as to the use of a deadly weapon by the defendant and as to his flight, the judgment is accordingly reversed and the cause remanded to the lower court for a new trial.

¶34. **REVERSED AND REMANDED.**

**LEE, C.J., PRATHER, P.J., BANKS, McRAE AND ROBERTS, JJ., CONCUR. PITTMAN, SMITH AND MILLS, JJ., NOT PARTICIPATING.**